UNITED STATES COURT OF INTERNATIONAL TRADE
NEW YORK, NEW YORK

**BEFORE: UNASSIGNED**

|  |  |
|---|---|
| JOINT STOCK COMPANY APATIT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 24-00226 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiff Joint Stock Company Apatit ("JSC Apatit") brings this Complaint against the United States of America, by and through undersigned counsel, and alleges and states as follows:

### PARTIES

1. Plaintiff JSC Apatit is a foreign producer and exporter of phosphate fertilizers from Russia. JSC Apatit is headquartered in Cherepovets, Russia.

2. Defendant United States of America is the Federal Government of the United States of America.

### DETERMINATION TO BE REVIEWED

3. JSC Apatit contests certain aspects of the final results issued by the U.S. Department of Commerce, International Trade Administration ("Commerce"), in its second countervailing duty ("CVD") administrative review of Phosphate Fertilizers from Russia, Case No. C-821-825. The CVD final results were published as *Phosphate Fertilizers from the Russian Federation: Final Results of Countervailing Duty Administrative Review; 2022*,

89 Fed. Reg. 88,960 (Dep't Commerce Nov. 12, 2024) ("*Final Results*"). This appeal also contests certain aspects of Commerce's accompanying *Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of Phosphate Fertilizers from the Russian Federation; 2022*, dated November 5, 2024 ("*Final Decision Memo*") and the *Final Results Calculations for Joint Stock Company Apatit*, dated November 5, 2024 ("*Final Calculations Memo*"). The period of review ("POR") was January 1, 2022, through December 31, 2022.

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c). That section confers exclusive jurisdiction on the U.S. Court of International Trade to review CVD final administrative review determinations issued by Commerce under Sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930 (the "Act"), *as amended*, 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I), (B)(iii).

## STANDING OF PLAINTIFF

5. JSC Apatit participated in the CVD investigation that is the subject of this action and was selected for individual review by Commerce.

## TIMELINESS OF THIS ACTION

6. Commerce published the *Final Results* in the *Federal Register* on November 12, 2024. On December 11, 2024, JSC Apatit filed a Summons with this Court, timely commencing this action within thirty (30) days after *Federal Register* publication of the *Final Results*. On January 10, 2025, within thirty (30) days thereafter, JSC Apatit filed this Complaint. Therefore, this action is timely brought in accordance with Section 516A(a)(2)(A)(i) of the Tariff

2

Act of 1930, 19 U.S.C. § 1516a(a)(2)(A)(i), 28 U.S.C. § 2636(c), and pursuant to Rules 3(a)(2) and 6(a) of this Court.

## STANDARD OF REVIEW

7. This Court reviews final determinations issued by Commerce pursuant to 19 U.S.C. § 1675(a) to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). In its review of the latter, this Court must assess whether Commerce employed the "best reading of the statute." *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) (overruling *Chevron, U.S.A., Inc. v. N.R.D.C, Inc*, 467 U.S. 837 (1984)).

## STATEMENT OF FACTS

8. Commerce published a CVD order on phosphate fertilizers from Russia in the *Federal Register* on April 7, 2021. *Phosphate Fertilizers from the Kingdom of Morocco and the Russian Federation: Countervailing Duty Orders*, 86 Fed. Reg. 18,037 (Dep't Commerce Apr. 7, 2021) ("CVD Order"). On April 4, 2023, Commerce published a notice of opportunity to request an administrative review of the CVD Order. On April 28, 2023, JSC Apatit and Industrial Group Phosphorite LLC ("Phosphorite") timely submitted a request for administrative review. Memorandum from James Maeder to Ryan Majerus, *Decision Memorandum for the Preliminary Results and Partial Rescission of the Countervailing Duty Administrative Review; 2022: Phosphate Fertilizers from the Russian Federation*, Case No. C-821-825 (2022 Administrative Review) (Apr. 26, 2024) ("*Preliminary Decision Memo*") at 2. On April 28, 2023, the Mosaic Company (the "Petitioner" or "Mosaic") also timely filed a request for review of the Order with respect to JSC Apatit and Phosphorite. *Id* at 2. Commerce then initiated the CVD administrative

3

review on June 12, 2023.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 38,021, 38,030 (Dep't Commerce June 12, 2023).

9. On July 11, 2023, Commerce selected JSC Apatit for individual review as a "mandatory respondent" and issued a CVD questionnaire to the Government of Russia ("GOR"), which was forwarded to JSC Apatit.  Letter from the U.S. Department of Commerce to Anastasia Zimonina, *Countervailing Duty Administrative Review of Phosphate Fertilizers from the Russian Federation: Countervailing Duty Questionnaire*, Case No. C-821-825 (2022 Administrative Review) (July 11, 2023).  On July 11, 2023, Commerce notified all interested parties of its intent to rescind this review with respect to Phosphorite, which did not have a suspended entry within the POR.  *Preliminary Decision Memo* at 2.

10. JSC Apatit timely submitted responses to Commerce's initial CVD questionnaire and supplemental questionnaires from August 1, 2023 to April 2, 2024.  *Preliminary Decision Memo* at 2.  On September 20, 2023, the Petitioner requested verification of the responses of JSC Apatit and the GOR.  *Id*. at 2.

11. On November 27, 2023, in accordance with section 751(a)(3)(A) of the Tariff Act of 1930 and 19 C.F.R. § 351.213(h)(2), Commerce postponed the preliminary results of the review until April 26, 2024.  *Id.* at 3.

12. Both JSC Apatit and the Petitioner timely provided benchmark data to Commerce on February 16, 2024.  Letter from Hogan Lovells US LLP to the U.S. Department of Commerce, *Phosphate Fertilizers from the Russian Federation: JSC Apatit's Benchmark Data Submission*, Case No. C-821-825 (2022 Administrative Review) (Feb. 16, 2024) ("JSC Apatit's Benchmark Submission"); Letter from WilmerHale to U.S. Department of Commerce, *Phosphate Fertilizers from the Russian Federation: Petitioner's Submission of Factual Information to Measure the*

*Adequacy of Remuneration*, Case No. C-821-825 (2022 Administrative Review) (Feb. 16, 2024) ("Petitioner's Benchmark Submission"). On March 4, 2024, JSC Apatit and the Petitioner both timely filed benchmark rebuttal data with Commerce. Letter from Hogan Lovells US LLP to the U.S. Department of Commerce, *Phosphate Fertilizers from the Russian Federation: JSC Apatit's Rebuttal Comments to Petitioner's Benchmark Data Submission*, Case No. C-821-825 (2022 Administrative Review) (Mar. 4, 2024) ("JSC Apatit's Benchmark Rebuttal Submission"); Letter from WilmerHale to U.S. Department of Commerce, *Phosphate Fertilizers from the Russian Federation: Petitioner's Benchmark Rebuttal Submission*, Case No. C-821-825 (2022 Administrative Review) (Mar. 4, 2024) ("Petitioner's Benchmark Rebuttal Submission").

13. In regards to the alleged natural gas program, JSC Apatit provided ownership information demonstrating that certain suppliers of natural gas to JSC Apatit are privately owned (i.e., not owned or controlled by the GOR), and that any purchases from these "independent gas suppliers" should be excluded from Commerce's calculations. Response from Hogan Lovells US LLP to the U.S. Department of Commerce, *Countervailing Duty Administrative Review on Phosphate Fertilizers from Russia: JSC Apatit Section III of Initial Questionnaire Response*, Case No. C-821-825 (2022 Administrative Review) (Sept. 22, 2023) at Exh. 38; JSC Apatit's Benchmark Submission at Appendices 1–5.

14. JSC Apatit provided mining rights benchmark data comprising phosphate rock pricing information from EuroStat and the International Fertilizer Association ("IFA"). JSC Apatit's Benchmark Submission at Appendices 6 and 9. JSC Apatit also provided phosphate rock export data reported by the Global Trade Tracker ("GTT") for Brazil, Finland, and South Africa. JSC Apatit's Benchmark Rebuttal Submission at Appendix 18. Petitioner provided benchmark data for the mining rights program comprising IHS Markit's Global Trade Atlas ("GTA") and UN

Comtrade export data for phosphate rock from Brazil, Finland, and South Africa. Petitioner's Benchmark Submission at Exhs. 3–5. JSC Apatit also provided phosphate rock export data reported by GTT, GTA and UN Comtrade for Togo. JSC Apatit's Benchmark Submission at Appendix 7; JSC Apatit's Benchmark Rebuttal Submission at Appendices 19–20.

15. On May 2, 2024, Commerce published in the *Federal Register* the Preliminary Results and assigned a preliminary CVD rate of 18.83% to JSC Apatit. *Phosphate Fertilizers from the Russian Federation: Preliminary Results and Partial Recission of the Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 35,794 (Dep't Commerce May 2, 2024) ("*Preliminary Results*"). Most importantly for purposes of this appeal, Commerce calculated its benchmark for the alleged mining rights from the GOR for less than adequate remuneration ("LTAR") program by taking the weighted average of the unrepresentative and skewed data for South Africa, Brazil, and Finland from GTA to form a "tier three" benchmark under 19 C.F.R. § 351.511(a)(2)(iii).

16. In the *Preliminary Decision Memo*, Commerce also determined that all natural gas suppliers to JSC Apatit are government "authorities," in accordance with 19 U.S.C. § 1677(5)(B). Commerce claimed that the GOR's failure to respond fully to Commerce's input producer appendices justified a finding of adverse facts available ("AFA"). Consequentially, despite record evidence submitted by JSC Apatit demonstrating the ownership of these suppliers, Commerce countervailed all of JSC Apatit's natural gas purchases.

17. From June 14–18, 2024, Commerce verified the questionnaire responses of JSC Apatit submitted to Commerce in the administrative review. *Final Decision Memo* at 2. On July 23, 2024, JSC Apatit and Mosaic timely filed case briefs. *Id.* JSC Apatit requested in its case brief that Commerce correct its calculation of the CVD margin for JSC Apatit with respect to the following, *inter alia*: (1) mining rights for LTAR program; (2) natural gas for LTAR from

6

independent gas producers/suppliers; (3) the Vologda Region's Support of Industrial Development. Case Brief of Hogan Lovells US LLP, *Countervailing Duty Administrative Review on Phosphate Fertilizers from Russia: JSC Apatit Case Brief*, Case No. C-821-825 (2022 Administrative Review) (July 23, 2024) ("JSC Apatit's Case Br.") at 2.

18. JSC Apatit's case brief demonstrated that, in the *Preliminary Results*, Commerce unlawfully countervailed certain mining licenses obtained by JSC Apatit prior to April 1, 2002. Specifically, Commerce unlawfully departed from the agency's longstanding practice of applying an April 1, 2002 cut-off date with alleged subsidies provided in Russia. *Final Decision Memo* at 27; JSC Apatit's Case Br. at 31–33.

19. JSC Apatit's case brief demonstrated that Commerce unlawfully relied on unrepresentative and artificially inflated data to calculate a "tier three" benchmark with respect to the alleged provision of mining rights for LTAR that is neither consistent with market principles, as required by 19 C.F.R. § 351.511(a)(2)(iii), nor reflective of prevailing market conditions, as required by 19 U.S.C. § 1677(5)(E)(iv). JSC Apatit further explained that Commerce unlawfully disregarded more accurate, complete data on the record (*e.g.*, the EuroStat and IFA data, as well as additional export pricing data from Jordan and Togo) without adequate explanation. *Final Decision Memo* at 10, 15–16, 19, 21–22; JSC Apatit's Case Br. at 17–28.

20. JSC Apatit's case brief explained that, in the *Preliminary Results* and with respect to the alleged provision of mining rights for LTAR, Commerce should have used JSC Apatit's Gross Profit figure in its profit ratio calculation to calculate the CVD margin as accurately as possible. *Final Decision Memo* at 23–24; JSC Apatit's Case Br. at 28–31.

21. In the *Preliminary Results* and with regard to the alleged natural gas for LTAR program, JSC Apatit demonstrated in its case brief that Commerce improperly inflated JSC

7

Apatit's CVD rate through the application of AFA to the GOR. Commerce should have taken into account the record evidence submitted by JSC Apatit and excluded JSC Apatit's gas purchases from certain independent gas suppliers from the agency's benefit calculation for this program. *Final Decision Memo* at 32–33; JSC Apatit's Case Br. at 33–42.

22. JSC Apatit also explained in its case brief that, in the *Preliminary Results*, Commerce erred in finding that the provision of natural gas is specific. Commerce's interpretation of the term "predominant user" in 19 U.S.C. § 1677(5A)(D)(iii)(II) is unreasonably broad and unlawful. *Final Decision Memo* at 35; JSC Apatit's Br. at 42–44.

23. Finally, JSC Apatit explained in its case brief that, in the *Preliminary Results*, Commerce erred in finding that the Vologda region's Support of Industrial Development ("SID") program is de facto specific when the tax deduction is generally available to any company making an investment in the region. *Final Decision Memo* at 37; JSC Apatit's Br. at 44–46.

24. On July 22, 2024, Commerce tolled certain deadlines in the administrative proceeding by seven days. *Final Decision Memo* at 3. On August 13, 2024, Commerce extended the deadline for the *Final Results* until November 5, 2024. *Id*.

25. On November 12, 2024, Commerce published the *Final Results* in the *Federal Register*.

26. Regarding the alleged natural gas for LTAR program, Commerce continued unlawfully in the *Final Results* to countervail JSC Apatit's purchases of natural gas from certain independent suppliers. *Final Decision Memo* at 33–35.

27. Regarding the alleged mining rights for LTAR program, Commerce continued unlawfully in the *Final Results* not to apply its April 1, 2002 cut-off date. *Id*. at 27–28.

28. Regarding the alleged mining rights for LTAR program, Commerce also unlawfully determined again in the *Final Results* to rely solely on GTA data for South Africa, Finland, and Brazil to calculate a mining rights benchmark based on market principles. *Id*. at 11–15. Specifically, ignoring the statutory requirements of 19 U.S.C. § 1677(5)(E)(iv), Commerce unlawfully refused to employ import pricing data from EuroStat, or export pricing from Togo, and/or Jordan, citing an arbitrary distinction among types of phosphate rock ore.

29. Regarding the alleged mining rights for LTAR program, Commerce further failed in the *Final Results* to include data for the third South African HTS code covering phosphate rock. This failure resulted in a South African benchmark export price that is both inaccurate and unrepresentative. *Id.* at 11–23.

30. Commerce continued unlawfully in the *Final Results* to calculate JSC Apatit's alleged benefit for the mining rights program by employing Profit Before Tax, instead of Gross Profit. *Id*. at 24–25.

31. Commerce assigned an inflated final CVD rate of 18.21% to JSC Apatit in the *Final Results*.

9

## STATEMENT OF CLAIMS

### COUNT ONE

32. Paragraphs 1 to 31 are adopted and incorporated herein by reference.

33. Commerce has firmly established and consistently held that it is unable to identify and measure subsidies conferred in Russia prior to April 1, 2002 due to previously existing broad distortions in the Russian economy, and that Commerce thus is unable to countervail alleged subsidies received prior to that date. Commerce's decision in the *Final Results* not to apply the April 1, 2002 cut-off date when determining whether mining rights were provided to JSC Apatit in Russia for LTAR is not supported by substantial evidence on the record and is otherwise not in accordance with law.

### COUNT TWO

34. Paragraphs 1 to 33 are adopted and incorporated herein by reference.

35. In calculating its "tier three" benchmark for the alleged mining rights for LTAR program, in accordance with 19 C.F.R. § 351.511(a)(2)(iii), Commerce unlawfully failed in the *Final Results* to employ more accurate phosphate rock pricing data from EuroStat or pricing data for phosphate rock exports from Togo or Jordan. Rather, Commerce calculated its benchmark price premised on an irrelevant and incorrect distinction among the type of phosphate ore used. Commerce's determination to exclude these pricing data is unsupported by substantial evidence on the record and is not in accordance with law. Commerce's phosphate rock benchmark is neither reflective of prevailing market conditions, as required by 19 U.S.C. § 1677(5)(E)(iv), nor consistent with market principles, as required by 19 C.F.R. § 351.511(a)(2)(iii), and is therefore unlawful. Moreover, Commerce unlawfully interpreted and applied the statutory factors test set forth in 19 U.S.C. § 1677(5)(E)(iv) in supporting that finding.

**COUNT THREE**

36.     Paragraphs 1 to 35 are adopted and incorporated herein by reference.

37.     Alternatively, with respect to the calculation of its "tier three" benchmark for the alleged mining rights for LTAR program, Commerce unlawfully relied in the Final Results solely on GTA export data for South African phosphate rock in HTS codes 2510.10 and 2510.20. Commerce refused to include the export data for South African phosphate rock in HTS code 2835.2690, notwithstanding clear record evidence demonstrating that excluding these data unlawfully inflates the South African benchmark price and thus the overall benchmark price employed by Commerce. Commerce's determination not to include in its mining rights benchmark the South Africa data in HTS code 2835.26 is not supported by substantial evidence on the record and is otherwise not in accordance with law. This is a further reason why Commerce's phosphate rock benchmark is not reflective of prevailing market conditions, as required by 19 U.S.C. § 1677(5)(E)(iv), nor consistent with market principles, as required by 19 C.F.R. § 351.511(a)(2)(iii), and therefore unlawful.

**COUNT FOUR**

38.     Paragraphs 1 to 37 are adopted and incorporated herein by reference.

39.     Regarding the calculation in the *Final Results* of JSC Apatit's benefit from the alleged mining rights for LTAR program, Commerce unlawfully calculated JSC Apatit's profit ratio by dividing the Profit Before Tax of PhosAgro PJSC (JSC Apatit's parent company) by its Cost of Sales. Commerce's determination to rely on PhosAgro PJSC's Profit Before Tax as the numerator in that calculation, as opposed to employing PhosAgro PJSC's Gross Profit figure, excluded significant additional expenses necessary to adjust JSC Apatit's cost of production for an appropriate comparison to an export sales price benchmark. Commerce's benefit calculation

11

for JSC Apatit is not supported by substantial evidence on the record and is otherwise not in accordance with law.

## COUNT FIVE

40. Paragraphs 1 to 39 are adopted and incorporated herein by reference.

41. Regarding the calculation in the *Final Results* of JSC Apatit's benefit from the alleged mining rights for LTAR program, Commerce also unlawfully failed to adjust for the administrative and selling expenses incurred by JSC Apatit's phosphate production branch in calculating JSC Apatit's profit ratio. Commerce's benefit calculation for JSC Apatit is not supported by substantial evidence on the record and is otherwise not in accordance with law.

## COUNT SIX

42. Paragraphs 1 to 41 are adopted and incorporated herein by reference.

43. Commerce unlawfully determined that all of JSC Apatit's natural gas producers/suppliers are government authorities, in accordance with 19 U.S.C. § 1677(5)(B), in reliance on the application of AFA to the GOR. Commerce determination to countervail all of JSC Apatit's purchases of natural gas from its independent suppliers is not supported by substantial evidence on the record and is otherwise not in accordance with law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)     hold that the *Final Results* are unsupported by substantial evidence and otherwise not in accordance with law;

(b)     remand the *Final Results* to Commerce with instructions to issue a new determination and take other actions, as appropriate, consistent with this Court's decision; and

(c)     provide such other and further relief as this Court deems just and proper.

                                      Respectfully submitted,

                                      /s/ Jonathan T. Stoel
                                      H. Deen Kaplan
                                      Jonathan T. Stoel
                                      Maria Arboleda

                                      HOGAN LOVELLS US LLP
                                      Columbia Square
                                      555 Thirteenth Street, N.W.
                                      Washington, DC 20004-1109
                                      (202) 637-6634
                                      jonathan.stoel@hoganlovells.com

                                      *Counsel to Joint Stock Company Apatit*

Date: January 9, 2025

13